# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| HUDSON SPECIALTY INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>SNAPPY SLAPPY LLC d/b/a JUS ONE MORE,<br><br>*Defendant.* | CIVIL ACTION NO.<br>5:18-cv-00104-TES |

## ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION

## INTRODUCTION

In this insurance coverage dispute,[1] Plaintiff Hudson Specialty Insurance Company ("Hudson") previously filed a Motion for Judgment on the Pleadings [Doc. 10]. In that motion, Hudson asked the Court to declare that, under the commercial general liability policy at issue in this case, it is not obligated to defend or indemnify its insured, Defendant Snappy Slappy LLC d/b/a Jus One More ("Snappy"), against claims arising

---

[1] Claimant Carol Slocumb filed a wrongful death action in the State Court of Houston County, Georgia, against Snappy, alleging that her son, Jabrial Adams, was shot and killed by a fellow business invitee to its business, Jus One More. [Doc. 1 at ¶¶ 8-10]. Thereafter, an agent of Snappy provided Hudson with a copy of Ms. Slocumb's complaint, and Hudson responded that Snappy's insurance policy barred coverage for Ms. Slocumb's lawsuit pursuant to, among other things, its Firearms Exclusion. [*Id.* at ¶¶ 26–27]. Snappy disputed this policy interpretation, and Hudson filed the instant action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201.

out of a fatal shooting on Snappy's premises.[2] [Doc. 10-1 at p. 1]. However, the Court denied Hudson's motion, finding that the relevant Firearms Exclusion in the insurance policy was ambiguous because it "does not limit or specify to *whom* it applies." [Doc. 15 at p. 6 (emphasis in original)]. In other words, the Court faulted the policy for not specifying whether the "use" of the firearm was limited to persons directly involved with Snappy or whether it applied to any person.

Sometimes, however, a Court just gets it wrong. This is one of those cases. When that happens, a Court is at its best when it acknowledges its mistake, owns it without offering excuses, and then fixes it. And, while this process may be deservedly humbling, it is simply the right thing to do. Therefore, as explained more clearly below, the Court **GRANTS** Hudson's Motion for Reconsideration [Doc. 21] in order to correct a clear error of law.

## DISCUSSION

### A.     **Standard of Review**

Motions for reconsideration are not to be filed as a matter of routine practice. LR 7.6, MDGa. However, such motions are appropriate if the party seeking reconsideration demonstrates that "(1) there has been an intervening change in the law, (2) new evidence has been discovered that was not previously available to the parties at the time the

---

[2] The Court's previous order [Doc. 15] accurately lays out the specific facts of this case, none of which are disputed.

2

original order was entered, or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice." *Bryant v. Walker*, No. 5:10-CV-84, 2010 WL 2687590, at *1 (M.D. Ga. July 1, 2010) (quoting *Wallace v. Ga. Dep't of Transp.*, No 7:04-cv-78, 2006 WL 1582409, at *2 (M.D. Ga. June 6, 2006)). Even though a motion for reconsideration may not be used to relitigate old matters or reargue settled issues, the Court realizes the virtually impossible task of confronting an erroneous application of law without making some of the same arguments. *See id.*; *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012).

### B. The Plain Language of the Firearms Exclusion

In this diversity action, Georgia's substantive law governs interpretation of the policy. *Travelers Prop. Cas. Co. v. Kan. City Landsmen, LLC*, 592 F. App'x 876, 881 (11th Cir. 2015) (noting that Georgia's choice of law rules dictate that insurance contracts are interpreted under the laws of the place where the contract is made, which is at the place it is delivered). Indeed, under Georgia law, insurance policies are written contracts and therefore subject to the standard rules of contract construction. *Dixon v. Midland Ins. Co.*, 309 S.E.2d 147, 150 (Ga. Ct. App. 1983). This analytical endeavor involves a question of law to be resolved by the Court, unless the relevant language presents an ambiguity incapable of resolution by the rules of construction. Ga. Code Ann. § 13-2-1.

> The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. To determine the intent of the parties, all the contract terms must be considered together in arriving at

> the construction of any part, and a construction upholding the contract in whole and every part is preferred. When the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation, the language used must be afforded its literal meaning and plain ordinary words given their usual significance . . . . An ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations. Where ambiguities exist, the court may look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent. Parol evidence may not be considered unless the written instrument is ambiguous.

*Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 791 S.E.2d 635, 639 (Ga. Ct. App. 2016).

Determining whether the Firearms Exclusion bars coverage requires the Court to interpret that contractual provision. Naturally, any court tasked with interpreting a contractual provision must, "[a]s always," begin with the disputed language itself. *Powe v. Chartis Specialty Ins. Co.*, 1:16-CV-1336-SCJ, 2017 WL 3525441, at *2–3 (N.D. Ga. June 1, 2017). The endorsement changing Snappy's insurance policy provides in relevant part: "This insurance policy does not apply to 'bodily injury[ ]' . . . arising out of the manufacture, importation, sales, distribution, gunsmithing, ownership, maintenance, or use of firearms or weapons." [Doc. 1-2 at p. 39]. "This exclusion," says Hudson, "is short, simple, and clear." [Doc. 10-1 at p. 7]. Hudson argues that by its plain language, the Firearms Exclusion bars coverage for the "bodily injury" claim asserted in the Houston County wrongful death action because it arose out of the use of a firearm. [*Id.* at p. 4].

4

Succinctly put, Ms. Slocumb's son was shot, with a gun, used on premises insured by Hudson so that the Firearms Exclusion protects it from both defending and indemnifying Snappy. Snappy, however, contends that "the Firearms Exclusion does not distinctly state who the user of the firearm" must be, and the exclusion is therefore, ambiguous. [Doc. 11 at p. 5]. Stated differently, Snappy argues that the absence of language limiting the broad application of the exclusion to a specific actor rendered it ambiguous.

"There is a low threshold for establishing ambiguity in an insurance policy." *St. Paul*, 774 F.3d at 709. In Georgia, "[a]mbiguity in an insurance contract is duplicity, indistinctiveness, uncertainty of meaning of expression, and words or phrases which cause uncertainty of meaning and may be fairly construed in more than one way." However, "no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation." *Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1231 (11th Cir. 2017) (quoting *Capital Color Printing, Inc. v. Ahem*, 661 S.E.2d 578, 583 (Ga. Ct. App. 2008)). Under this purview, the focus is on the language actually used by the parties.

In its previous order, the Court, as Hudson correctly states in its Motion, effectively changed the language of the Firearms Exclusion and inserted modifying language not otherwise present in the exclusion agreed upon by the parties. [Doc. 21-1 at pp. 3–6]. This the Court cannot do. *See Fernandes v. Manugistics Atlanta*, 582 S.E.2d 499, 503 (Ga. Ct. App. 2003) (discussing that a court "is [not] at liberty to rewrite or revise a

5

contract under the guise of [interpreting] it); *see also United States Liability Ins. Co. v. Griffith*, No. 1:16-CV-01735-ELR, 2017 WL 3521644, at *3 (N.D. Ga. May 10, 2017) (holding that courts are "without the authority to interpret, rewrite, or change the terms of an unambiguous insurance policy"). The absence of limiting language as to whose use is excluded does not render the exclusion ambiguous because breadth does not equate to ambiguity. *Powe*, 2017 WL 3525441, at *4–5; *see also* [Doc. 21-1 at p. 7].

To that end, by not limiting or modifying the noun "use" in the exclusion, its plain language bars coverage for "bodily injury" arising out of the use of firearms, generally. [*Id.*]; *see also* [Doc. 1-2 at p. 39]. The lack of any limiting language *before* "use" indicates that there is no limitation. In summation, Hudson's decision not to limit the word "use" to certain persons means that it applies to *anyone's use* of a firearm. Accordingly, the language included in the Firearms Exclusion is not ambiguous. Because the bodily injuries on Jus One More's premises clearly arise "out of the . . . use of firearms or weapons," the Firearms Exclusion applies to exclude coverage. The Court's previous ruling would "strain to extend coverage where none was contracted or intended [by the parties]" and was a clear error of law that must be corrected. *Griffith*, 2017 WL 3521644 at *3 (quoting *Flowers*, 644 S.E.2d at 455).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Hudson's Motion for Reconsideration [Doc. 21] and **VACATES** its previous Order Denying Plaintiff's Motion

6

for Judgment on the Pleadings [Doc. 15]. The parties' Cross-Motions for Summary Judgment [Docs. 27, 29] are **DENIED as moot**.

**SO ORDERED**, this 1st day of May, 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**